[No. 16690. Department Two. December 8, 1921.]

*In the Matter of the Estate of* GEORGE ADIN.[1]

EXECUTORS AND ADMINISTRATORS (159-1)—ACCOUNTING—DISBURSE-MENTS—LAST SICKNESS—PROVISIONS OF WILL. A will providing that a named beneficiary should take nothing thereunder, until he should execute a release and acquittance of all demands which he may have against the testator or his estate, did not contemplate a claim based on the fact that such beneficiary had become responsible for the expenses of the testator's last sickness.

SAME (45)—MANAGEMENT OF ESTATE—PERSONAL PROFIT—POSSES-SION OF PROPERTY. Where, under the terms of a will and by agree-ment of the beneficiaries, an administrator, who had been given a life estate in a tract of land, had gone into possession and personally profited thereby, such fact could not be urged as an objection against his final account.

SAME (163)—SETTLEMENT AND ACCOUNTING — COMPENSATION — WAIVER OF RIGHT. The heirs of an executor who had died pending administration cannot complain there was no allowance for services of such deceased executor in the final account, where no account had been filed on behalf of the deceased executor and the report made no provision for compensation to either executor or admin-istrators.

WILLS (85)—RIGHTS OF DEVISEE—CLAIMS—CONSTRUCTION OF WILL—DUTY TO CANCEL. An objection that an administrator with the will annexed had not cancelled every claim which he had against the estate as required by a bequest in his favor is without merit, where the record shows he never presented any claim against the estate, and that he had filed a proper acquittance with the deceased executor of the estate.

[1]Reported in 202 Pac. 262.

EXECUTORS AND ADMINISTRATORS (158)—SETTLEMENT AND ACCOUNT-
ING—USE AND OCCUPATION OF PREMISES. An objection to the final
account of an administrator on the ground that the expenses of ad-
ministration were not a pro rata charge against the devisees, lega-
tees and beneficiaries is not well taken, where the will expressly
provided the charges should be prorated, and such charges were
necessarily incurred and paid by the administrator, and were less
in amount than if the fees due the administrators, but not charged,
had been included.

Appeal from an order of the superior court for
Skagit county, Brawley, J., entered June 8, 1921, ap-
proving the final account of an administrator, after a
hearing before the court. Affirmed.

*Robert A. Devers* and *Edward Judd,* for appellants.
*R. V. Welts* and *Coleman & Gable,* for respondent.

MACKINTOSH, J.—The will of George Adin was sus-
tained by this court in *In re Adin's Estate,* 112 Wash.
93, 379, 191 Pac. 839, 192 Pac. 887. By the terms of the
will, Milo A. Root was appointed executor of the estate,
and after his death Severene Olson and Edward Cran-
dall were appointed administrators with the will an-
nexed, and Olson has filed his account and report, to
which the Root heirs have objected, and which, after a
hearing, has been approved, and from that approval
this appeal is taken.

Olson, who had for a great many years been a friend
and employee of Adin, and had been promised a part
of Adin's property in consideration of his services,
was, by the provisions of the will, taken care of as
follows:

"I expressly direct, however, that no property herein
mentioned or referred to shall go to Severene Olson,
and he shall take nothing under this will, until he shall
execute and deliver to my executor a release and acquit-
tance in full of every and all demands which he may
have, or claim to have, against me or my estate at the
time of my death—the devises and bequests to him.

herein made being in lieu of any and all interests which he may have or claim to have in any property, or in any portion thereof, or in any claim or obligation against me that he may have or claim to have. Said deed and acquittance shall be duly executed and delivered to my executor within thirty days from the date upon which this will is admitted to probate.''

By the terms of the will, Mary Crandall and Philip and Alice Whitehead, relatives of Adin, were given parts of the estate. Milo A. Root was given a portion, and several others were given small portions. The will provided a method of compensation for the executor different from that generally obtaining:

''Within a reasonable time after this will is admitted to probate, my executor shall prepare and file an inventory, setting forth the portion or amount given, devised or bequeathed to each and every devisee, legatee and beneficiary herein, and shall have each and every portion appraised by three disinterested appraisers appointed by him, who shall fix the value as of the time of my death. . . . The compensation of my executor shall be ten per cent upon the value of my entire estate, and in case of litigation concerning this will, or in any way in the administration of my estate, he shall receive such additional sum or sums as shall be fair and reasonable. Each devisee, legatee and beneficiary shall pay to my executor for costs and expenses of administration and executor's fees and expenses, such proportional portion of the entire amount there as the appraised value (as aforesaid) of his or her portion bears to the entire value of all my property appraised as hereinbefore provided for; and such portion of the costs, fees and expenses of administration, including my executor's compensation, shall be and remain a lien upon the portion of each devisee, legatee and beneficiary and my executor is hereby authorized to sell any such property for its portion of such costs, fees, expenses and compensation, if the same is not paid within six months from date of probate of this will.''

Root, as executor, had the inventory and appraisement made as directed, which fixed the value of the shares going to the different parties as of the time of Adin's death. At the time of the appointment of Olson and Crandall as administrators with the will annexed, it was agreed in open court by everyone having an interest in the estate that they might each take immediate possession of their shares of the estate, and this arrangement was thereupon put into effect, and from that time on every one of the devisees, legatees and beneficiaries, except the non-resident heirs, took his or her share and controlled, managed and operated it without any further consideration of the probate proceeding. A contest was waged over the validity of the will, and in this contest certain expenses were incurred. During administration, as appears by Olson's report, he came into possession of various sums of money from several parts of the estate, and he has credited those sums upon the expenses of administration which he has prorated among the interested parties, as provided for in the last section of the will which we have quoted, and has asked that the balance remain a lien upon the portion of each devisee, legatee and beneficiary according to the provisions of that portion of the will.

There are several objections made to the confirmation of Olson's report:

(1) It is urged that Olson was not entitled to appointment as administrator for the reason that his petition for appointment alleged he was a creditor; and that he could not, under the terms of the will, be a creditor of the estate and at the same time a recipient of a portion of it. As we read the will, the provision thereof relating to an acquittance from Olson would not refer to such a claim as Olson alleged in his petition as entitling him to the appointment, the petition being based upon the fact that Olson had become re-

sponsible for the expenses of Adin's last sickness. His assertion of that claim was not such an one as was contemplated by the acquittance provision of the will. Furthermore, the order appointing him administrator was not based upon his right of appointment as a creditor, for the court found, as a matter of fact, that he was not a creditor, and appointed him for the reason that he was a fit and proper person.

(2) It is objected that Olson personally profited by the administration of the estate, for the reason that he has used since his appointment the forty acres of land in which he was given a life estate by the will, and that the record shows an application by Olson to be allowed to lease this property to himself. Viewed in any light, this objection is of no effect for the reason that, under the terms of the will, and by the agreement of the parties, Olson was entitled to the possession of this property, and did not go into possession of it by virtue of any lease from himself as administrator.

(3) The report is objected to because it provides for no compensation for Root for services rendered by him as executor before his death. The answer to this lies in the fact that the account before us is Olson's final account, and that no account has been filed on behalf of Root, and there is no provision in the report for any compensation to either the executor or administrators. The services of the administrators being greatly in excess of those rendered by Root, the Root heirs are in no position to complain, for the reason that, if expenses had been allowed the executor and administrators, their pro-rata share would have more than consumed the portion that was allowed to them as heirs of Root.

(4) It is next objected that Olson could not take the property bequeathed and devised to him for the reason that he had not cancelled every claim which he had

against the estate. The record satisfies us that Olson has never presented any claim against the estate, and there is sufficient proof that a proper acquittance was filed with Root. Furthermore, the will does not provide that Olson should not take his share of the estate *unless he files an acquittance,* but merely provides that he shall not take *until* such acquittance is filed, and under such a provision it is not yet too late for Olson to file an acquittance.

(5) The next objection is that the attorney's fees in the will contest were not properly apportioned. An examination of the record does not persuade us to make any change in this apportionment.

(6) Error is alleged referring to the failure of Olson to account for the income of the portion of the estate which he has occupied. This is based upon the argument that Olson was not entitled to such possession. As we have already seen, there is no merit in this contention, for by the agreement of the parties, under the provisions of the will, Olson was entitled to take possession at the time he did.

(7) The report is said to be erroneous because it allowed Olson to take possession of certain personal property belonging to Root which has not been delivered to Root or his heirs. The report shows nothing to substantiate such an objection, but, on the contrary, shows that all of the personal property which belonged to the Root estate had been accounted for as having been used in payment of the debts on the property taken possession of by Root, and that the balance is accounted for in Olson's hands, and is to be used in giving credit for the charges against the Root estate for its proportionate share of the expenses of administration.

Other minor objections are made which are without merit.

Boiled down to essentials, the two main contentions made by the appellants are, first, that Olson was not entitled to his share of the estate because he never released any claims he may have had against Adin; and second, that the expenses of administration were not a pro rata charge against the devisees, legatees and beneficiaries. The first of these contentions we have already answered by showing that Olson has asserted no claim, and that as to the matter of filing an acquittance, the evidence shows that one was actually filed. On the second point, the will itself expressly provided that the charges shall be prorated, and the charges which were prorated were ones necessarily incurred and paid by Olson and, as a matter of fact, are less in amount than they might have been had Olson included fees for the administrators.

Taking the record as a whole, we see no reason for disturbing the order of the probate court in approving the final account. The judgment is affirmed.

PARKER, C. J., MAIN, HOLCOMB, and HOVEY, JJ., concur.