[No. 20161.   Department Two.   March 31, 1927.]

## In the Matter of the Estate of CLARA B. ELLIS, Deceased.

### ROSCOE MACCAMMON et al., Appellants, v. D. K. SICKELS, as Executor, et. al., Respondents.[1]

[1] WILLS (7)—TESTAMENTARY CAPACITY—EVIDENCE—SUFFICIENCY. Findings of mental capacity to make a will will be sustained where there was ample evidence that the testator, though sick, comprehended what property she owned and what she desired done with it, giving it to relatives of whom she was very fond, pursuant to plans held for some time.

[2] NEW TRIAL (35, 36)—NEWLY DISCOVERED EVIDENCE—DILIGENCE —CUMULATIVE EVIDENCE.   It is not error to refuse a new trial for newly discovered evidence that was merely cumulative, with no reasonable excuse for failing to produce it.

Appeal from a judgment of the superior court for King county, Ronald, J., entered April 13, 1926, upon findings in favor of the defendants, in a will contest, tried to the court.   Affirmed.

[1]Reported in 254 Pac. 837.

*Roberts & Skeel* and *D. D. Mote,* for appellant.

*D. K. Sickels* and *M. E. Sheldon,* for respondents.

Bridges, J.—This is a will contest. On the 30th of October, 1925, Mrs. Clara B. Ellis, of Seattle, made and executed her last will and testament, whereby she gave to her only child, Roscoe MacCammon, one hundred dollars, to his wife a like sum, and to a foster daughter ten dollars, and the balance of the estate, which for the most part consisted of a brick store and apartment house of the value of some six thousand dollars or eight thousand dollars, she gave either directly to her two grandchildren, the daughters of her son Roscoe, or to the Seattle Title Trust Company for their benefit. Ten days after Mrs. Ellis made her will, she died. The son, Roscoe MacCammon, contested the will on the ground that, at the time it was executed, the testatrix was mentally incompetent to make a will. The trial court found that the deceased was capable of making a will, and dismissed the action.

[1] We have carefully read the testimony and do not see that any particular good could be accomplished by here giving a detailed recital of it. Generally speaking, it tended to show that at the time of her death Mrs. Ellis was sixty years of age and for some months prior thereto had been ill. During the last few months of her life, she was sick with a dropsical condition and she also had a serious heart trouble, all of which, at least at times, until her death, gave her considerable pain and suffering. She grew quite rapidly worse, and died of the ailments mentioned. Throughout her life she had been a woman of strong mentality, and largely by her own efforts accumulated a modest fortune. She was very fond of her son and of her two grandchildren. The record seems to indicate that she carried one thousand dollars life insurance which was payable to her

son, and that from time to time she had advanced him considerable sums of money.

There can be no question but what the deceased was a very sick person at the time she made her will, and some of the testimony shows that, during the three or four weeks before her death, she was at times suffering much pain, was flighty, and had very poor memory. On the other hand, the person who drew her will and those who witnessed it, and others who were about her at that time, were positive in their testimony that she fully comprehended what property she owned, understood what she desired to do with it, and generally was mentally sound. Some months before the will was actually executed, the deceased had made up her mind to make it in substantially the form it now appears, and did not then execute it because she had not fully decided as to whom she would appoint as trustee under the will. The trial judge, who has had long service on the bench, and who because thereof is probably peculiarly fitted for the trial of such cases as this, as well as others, expressed himself as being fully convinced that the deceased was of sound mind at the time she made her will. In this view we heartily concur.

[2] It is also claimed that the court erred in not granting the motion for a new trial. This is supported by a number of affidavits of persons who were not witnesses at the hearing, to the effect that, if they were called as witnesses, they would testify that the deceased was not, in their opinion, mentally sound at the time the will was made. These affidavits do not show such newly discovered evidence as would justify the court in granting a new trial. There is no showing whatsoever why the testimony of these witnesses could not have been produced at the trial or that there was any reasonable excuse for not producing it. To grant

a new trial under these circumstances would be to justify the granting of a new trial in almost every case that is tried. We think there is no question but what the court was right in denying the new trial.

The judgment is affirmed.

MACKINTOSH, C. J., TOLMAN, PARKER, and ASKREN, JJ., concur.