IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| KITTITAS COUNTY, a municipal corporation and political subdivision of the State of Washington, | ) ) ) ) | No. 39290-2-III |
| Respondent, | ) ) | |
| v. | ) ) | |
| SKY ALLPHIN; ABC HOLDINGS, INC.; and CHEM-SAFE ENVIRONMENTAL, INC., | ) ) ) ) | UNPUBLISHED OPINION |
| Appellants, | ) ) | |
| WASHINGTON STATE DEPARTMENT OF ECOLOGY, | ) ) ) | |
| Defendant. | ) | |

PENNELL, J. — This court is tasked with reviewing yet another dispute between Sky Allphin and Kittitas County regarding Mr. Allphin's 2012 request for records under the Public Records Act (PRA), chapter 42.56 RCW. We have twice remanded this case

for an award of attorney fees, costs, and per diem penalties on the narrow issue of the County's improper withholding for 98 days of six e-mails. A remand hearing was held in 2022 and the trial court determined Mr. Allphin was entitled to $490 in penalties and $8,750 in attorney fees and costs. On appeal, Mr. Allphin argues the trial court abused its discretion in assessing penalties. We disagree and affirm.

FACTS

In 2012, Sky Allphin, the president of Chem-Safe Environmental, Inc., submitted a PRA request to Kittitas County seeking records, including e-mail correspondence, relating to an investigation of Chem-Safe and its parent company, ABC Holdings, Inc. The request sought all records relating to Chem-Safe since 2010.

The County sought to protect some of the e-mail records from disclosure on the basis of ongoing litigation. In early 2013, the County filed a complaint for declaratory judgment and injunctive relief, seeking a judicial determination that certain confidential records held by Kittitas County were exempt from disclosure.

In March 2013, the County provided Mr. Allphin with an exemption log, claiming various documents were protected by attorney-client privilege. The County subsequently realized that six e-mails included in the exemption log were not protected. The County then provided Mr. Allphin the six e-mails on July 3, 2013. The parties agree the six e-mails had been withheld from disclosure for 98 days.

2

In January 2014, after producing more than 20,000 pages over the course of 16 installments, the County informed Mr. Allphin its response to the PRA request was complete.

In March 2014, Mr. Allphin filed counterclaims against the County, alleging violations of the PRA. According to the counterclaims, the County had "unlawfully withheld and redacted non-exempt public records," in violation of the PRA. Clerk's Papers (CP) at 501. Mr. Allphin asked for a daily penalty for the records the County had failed to identify and release.

The parties filed cross motions for summary judgment. Mr. Allphin's motion alleged the County failed to provide its fullest assistance and unlawfully withheld nonexempt records. The County argued there was no violation because it had produced the six e-mails to Mr. Allphin before he filed his claim.

The trial court granted summary judgment in favor of the County, finding no PRA violation, and dismissed Mr. Allphin's counterclaims with prejudice.

Mr. Allphin appealed, claiming the County: (1) made improper claims that documents were exempt from attorney-client privilege, (2) wrongfully withheld and then subsequently produced certain records, (3) intentionally and wrongfully delayed its response, (4) unlawfully deleted or lost responsive public records, (5) overbroadly redacted or withheld hundreds of records with no claim of exemption, and (6) wrongfully

3

deleted or withheld the "'smoking gun memorandum.'" *Kittitas County v. Allphin*, 195 Wn. App. 355, 381 P.3d 1202 (2016) (published in part) (*Allphin* I), *aff'd*, 190 Wn.2d 691, 416 P.3d 1232 (2018) (*Allphin* III).

On review in 2016, we largely upheld the trial court's ruling. In the unpublished portion of our decision, we held Mr. Allphin had "prevailed very narrowly" on the claim that the County violated the PRA by improperly withholding the aforementioned six e-mails for 98 days. *Allphin* I, No. 33241-1-III, slip op. (unpublished portion) at 36, https://www.courts.wa.gov/opinions/pdf/332411.pub%20in%20part.pdf. We remanded to the trial court for "an award of costs and attorney fees reasonably incurred in obtaining the six e-mails." *Id*. We also explained the trial court had discretion under RCW 42.56.550(4) "to award Mr. Allphin a per diem penalty for each day the County withheld these records," i.e., the six wrongly withheld e-mails. *Id*. And we noted that "[i]f the trial court exercises its discretion to award a penalty, it also has discretion to treat the six e-mails as one group for purposes of calculating the daily penalty." *Id*. at 36-37. In addition to remanding for a trial court award of fees, costs, and penalties, we directed the appellate court commissioner to determine "the appropriate cost and attorney fee award for those costs Mr. Allphin incurred on appeal relating to these six e-mails." *Id*. at 36.

Mr. Allphin petitioned the Supreme Court for review. The court granted review only as to the issue of whether work product privilege applied to the County's withheld records under the "'common interest doctrine.'" *Kittitas County v. Allphin*, 187 Wn.2d 1001, 386 P.3d 1089 (2017). The court declined to address other issues raised by Mr. Allphin. The Supreme Court subsequently issued an opinion affirming this court's opinion. *Allphin* III, 190 Wn.2d 691.

After the Supreme Court issued its decision, the Supreme Court Clerk took up the issue of appellate attorney fees that had been ordered by our court. Mr. Allphin requested nearly $80,000.00 in fees and costs. The County objected to this request. One of the County's objections was that Mr. Allphin had improperly included 31.9 hours of work related to a public records request that fell outside the scope of his appeal. The Supreme Court Clerk sustained this objection, explaining "records provided after the notice of appeal was filed in March 2015 are not the subject of this appeal." CP at 333. After the Supreme Court Clerk excluded work unrelated to the instant appeal and then apportioned the fees to the narrow scope of the six wrongly withheld e-mails, the court issued a total award of fees and costs of $2,503.09. A supplemental judgment was issued on January 29, 2019, in that amount.

5

The County attempted to tender payment of the Supreme Court's award, but Mr. Allphin refused due to a disagreement with the satisfaction language. Mr. Allphin claimed the language would have precluded further recovery of fees and costs and potential per diem penalties as authorized by this court's 2016 opinion. In February 2019, the County informed Mr. Allphin it had deposited $2,513.79, which included prejudgment interest, into the registry of the court in accordance with RCW 4.56.100.

Mr. Allphin did not withdraw the funds from the court's registry. Instead, over the course of the next two years, Mr. Allphin continued to pursue PRA claims regarding the County.

In February 2021, the County filed a motion arguing Mr. Allphin had waived the right to an award associated with the six e-mails. The County argued Mr. Allphin's failure to note the matter for hearing, coupled with his refusal to accept payment of the Supreme Court's supplemental judgment award, demonstrated waiver of penalties of fees in connection with this lawsuit.

Mr. Allphin represented himself pro se in response to the County's motion. He adamantly denied he had waived relief. "Throughout his brief and oral argument, Mr. Allphin intermixed his requests for penalties regarding the six e-mails with allegations of further violations warranting a penalty. He moved for a 'delay in hearings,' arguing it would be premature for the court to make a ruling until the County released

all the documents he felt were related to his case." *Kittitas County v. Allphin*, No. 38228-1-III, slip op. at 4 (Wash. Ct. App. Apr. 28, 2022) (unpublished) https://www.courts.wa.gov/opinions/pdf/382281_unp.pdf (*Allphin* IV).

In response to Mr. Allphin's remarks, the County asked the trial court to make a ruling regarding the six withheld e-mails. The County asserted that "'if Mr. Allphin thinks there are other e-mails that are missing . . . that's a separate matter from the status of this—this litigation.'" *Id.* at 5. The County requested the court either find waiver or simply make a decision regarding the penalty for the six withheld e-mails. *Id.*

The trial court took the County's motion under advisement. "In its written decision, rather than setting a fees and costs amount . . . as suggested in the County's closing remarks," the trial court ruled Mr. Allphin had waived his right to relief. *Id.* at 5.

Mr. Allphin appealed the trial court's decision, and we reversed in an unpublished decision, dated April 28, 2022. *Id.* We noted Mr. Allphin's delay was due to his misguided belief that he needed to resolve all of his PRA claims prior to seeking an award for the six e-mails, and his "erroneous . . . understanding of the effect of our mandate." *Id.* at 10. Because a misunderstanding is not the same as an intentional waiver, we remanded "to the trial court for action consistent with our 2016 opinion." *Id.* at 10-11. "To avoid any confusion on remand, we direct[ed] Mr. Allphin, as the prevailing party, to note the matter for a hearing within 90 days." *Id.* at 11. Our decision did not specify

7

whether the 90 days would begin to run with the filing of our decision or with the mandate. This court issued a mandate, returning the case to superior court, on June 15, 2022.

On July 27, 2022—90 days after issuance of our decision—the County filed a motion in the superior court for an order on penalties regarding the six e-mails. The County pointed out that it had spent hundreds of hours and produced more than 20,000 pages of records in response to Mr. Allphin's PRA request. The County argued that, consistent with our 2016 decision, the trial court should consider the six e-mails as a single record and impose a per diem penalty of $5 per day. Because the records were withheld for 98 days, the County argued the total penalty should be $490. The County justified its penalty argument by reviewing the framework set forth in *Yousoufian v. Office of Ron Sims*, 168 Wn.2d 444, 229 P.3d 735 (2010) (*Yousoufian* II).

Two days after the County filed its motion, Mr. Allphin filed a motion for penalties and fees. This time he was represented by counsel. Mr. Allphin argued the County's motion was "improper" and a "bad faith attempt to confuse this Court." CP at 108, 112. Mr. Allphin argued that, contrary to the County's motion, "the six emails remanded by the Court of Appeals [were] not the only penalty issue before this Court." *Id*. at 117. According to Mr. Allphin, during the pendency of litigation, he had discovered three new e-mail records that had not been disclosed by the County in response to his

2012 PRA request. Mr. Allphin alleged the e-mails had been withheld for 6173 days. He asked that the court "impose a separate penalty for each" of these allegedly silently withheld records, in the amount of "$100 per day." *Id*. at 120, 122 (boldface omitted). Mr. Allphin also requested $21,060 in attorney fees. *Id*. at 122.

The County responded to Mr. Allphin's motion on August 3, 2022, arguing that Mr. Allphin's request for per diem penalties for records other than the six e-mails were new allegations, outside the scope of the current lawsuit. The County pointed out that Mr. Allphin's claims against the County for silent withholding had been dismissed on summary judgment with prejudice back in 2015. According to the County, Mr. Allphin's new allegations of silent withholding had not been proved and, "[a]bsent a judicial determination that the County denied Mr. Allphin an opportunity to inspect the New Records in violation of RCW 42.56.550(1), Mr. Allphin [would not be] entitled to a penalty award in connection with these records." *Id*. at 344-45.

Mr. Allphin filed a reply brief on August 4, 2022. Mr. Allphin claimed that by failing to refute his claims of new PRA violations, it was now "an undisputed fact that the County silently withheld three separate records for 6173 total days." *Id*. at 358. Mr. Allphin alleged the County was seeking to "hide its obvious misconduct behind procedural arguments." *Id*. Mr. Allphin claimed that because our 2016 opinion did not address his silent withholding claims and remanded the case, he was entitled to bring new

9

claims for silent withholding. At the end of his analysis, Mr. Allphin argued in the alternative that the court should at least consider the new evidence of withheld records in determining a daily penalty for the six e-mails.

A hearing was held the next day, on August 5, 2022. At the hearing, Mr. Allphin urged the trial court to issue a penalty of up to $617,000 based on the newly discovered evidence of silent withholding. The trial court declined to issue an award pertaining to Mr. Allphin's new allegations, explaining the Court of Appeals had only told it to address the six e-mails. The court noted that Mr. Allphin could raise his allegations of newly discovered PRA violations "at some other time." Rep. of Proc. (Aug. 5, 2022) at 10. In response to Mr. Allphin's argument that the court could still consider evidence of any new violations in issuing a penalty, the court reasoned that there was no evidence of a "nefarious plan" to avoid compliance with the PRA. *Id.* at 51. The court determined the County had shown "a lack of bad motive at least up until—up through the time [the six e-mails] were produced." *Id*. at 62.

The trial court ultimately decided to group the six e-mails together as a single record for purposes of assessing the 98-day per diem penalty. The court imposed a total penalty of $490 and awarded $8,750 in attorney fees. The court issued a written decision explaining its penalty decision under the *Yousoufian* factors as follows:

a. Kittitas County responded promptly to Mr. Allphin's public records request within five business days in the manner required by RCW 42.56.520. Kittitas County communicated with Mr. Allphin during the entirely of its 14-month response to Mr. Allphin's public records request. County employees spent considerably in excess of 350 hours responding to Mr. Allphin's public records request and produced more than 20,000 pages of records to Mr. Allphin. These efforts show a good faith effort by Kittitas County to respond to Mr. Allphin's public records request.

b. The PRA violation resulted through inadvertence or mistake. There is no evidence that the PRA violation is attributable to a lack of PRA training.

c. There is no evidence that Kittitas County sought to conceal email records or delay the production of records to Mr. Allphin. The County produced the six emails to Mr. Allphin in July 2013, approximately six months before closing the request in January 2014.

d. Aggravating factors of dishonesty, bad faith, and/or intentional noncompliance with the PRA are not present.

e. The requestor did not suffer any actual personal economic loss as a result of the PRA violation.

f. No remedial objective is served by a high penalty award. There is no evidence the County did not take Mr. Allphin's public records request seriously. Nor is there evidence the County failed to adequately provide resources or staff for its public records request response efforts.

g. In support of his motion for penalties and fees, Mr. Allphin submitted a declaration and a supplemental declaration claiming various PRA violations he alleges the County committed when responding to his public records request. In extensive litigation on the merits of Mr. Allphin's PRA claims, neither the trial court nor the appellate court found any PRA violations other than the violation

associated with the six wrongfully withheld email records. This
Court declines to consider these allegations as meriting a heightened
penalty award.

4. Having begun its determination by considering the entire penalty range,
from zero to one hundred dollars per day, and pursuant to its analysis of the
*Yousoufian* factors, the Court finds that a per diem penalty in the amount of
$5.00 per day is appropriate. The Court finds that the total PRA penalty
amount in this case is $490.00 (1 group of emails * 98 days + $5.00 per day
= $490.00).

CP at 467-69.

Mr. Allphin now appeals.

## ANALYSIS

*Legal standards governing the trial court's penalty determination*

A trial court's PRA penalty determination involves two steps: "(1) determine the

amount of days the party was denied access and (2) determine the appropriate per day

penalty between $5 and $100 depending on the agency's actions." *Yousoufian v. Office*

*of Ron Sims*, 152 Wn.2d 421, 438, 98 P.3d 463 (2004) (*Yousoufian* I).

Here, the first step was settled by our 2016 opinion. The six e-mails were

improperly withheld for 98 days. Thus, the only task before the trial court was to

determine the appropriate penalty. This involved an assessment of mitigating and

aggravating factors as set forth in *Yousoufian* II, 168 Wn.2d at 467-68.

Mitigating factors, which may serve to decrease a penalty, include: (1) a lack of clarity in the PRA request, (2) the agency's prompt response or legitimate follow-up inquiry for clarification, (3) the agency's good faith, honest, timely, and strict compliance with all PRA procedural requirements and exceptions, (4) proper training and supervision of the agency's personnel, (5) the reasonableness of any explanation for noncompliance by the agency, (6) the helpfulness of the agency to the requestor, and (7) the existence of agency systems to track and retrieve public records. *Id.* at 467.

Aggravating factors, which may support increasing a penalty, include: (1) a delayed response by the agency, especially in circumstances making time of the essence, (2) lack of strict compliance by the agency with all the PRA procedural requirements and exceptions, (3) lack of proper training and supervision of the agency's personnel, (4) unreasonableness of any explanation for noncompliance by the agency, (5) negligent, reckless, wanton, bad faith, or intentional noncompliance with the PRA by the agency, (6) agency dishonesty, (7) the public importance of the issue to which the request is related, where the importance was foreseeable to the agency, (8) any actual personal economic loss to the requestor resulting from the agency's misconduct, where the loss was foreseeable to the agency, and (9) a penalty amount necessary to deter future misconduct by the agency considering the size of the agency and the facts of the case. *Id.* at 467-68.

13

Once a trial court settles on a penalty amount, we will review the court's decision for abuse of discretion. *Hoffman v. Kittitas County*, 194 Wn.2d 217, 224, 228, 449 P.3d 277 (2019).

*Mr. Allphin's arguments against the trial court's penalty determination*

Mr. Allphin proffers four reasons why the trial court abused its discretion in determining the penalty award. First, he contends the trial court improperly refused to consider evidence of new PRA violations. Second, he claims the court wrongly shifted the applicable burden of proof. Third, he argues the court erroneously refused to consider evidence of the new PRA violations in its penalty determination for the six undisclosed e-mails. And fourth, he claims the court improperly refused to consider the County's excessive litigiousness as evidence of bad faith. We disagree with these arguments and address each in turn.

*New PRA violations*

Mr. Allphin argues the trial court erroneously refused to consider new claims of silent withholding during the remand hearing. While we agree with Mr. Allphin that the court refused to consider new claims, we disagree that this refusal was erroneous. Our 2016 mandate was limited. The question of liability had been settled. The only issues to be decided were the amounts of attorney fees, costs, and daily penalties to be awarded

14

in conjunction with the six withheld e-mails. The trial court's assessment of the scope

of the hearing was therefore proper.

Contrary to Mr. Allphin's arguments, a "remand is not an invitation to the parties

to litigate new issues outside the scope" of the appellate court's ruling. *State v. Arlene's*

*Flowers, Inc.*, 193 Wn.2d 469, 500, 441 P.3d 1203 (2019). If Mr. Allphin believed he had

evidence of new PRA violations, he could have initiated a separate PRA action or sought

to amend his pleadings in the existing case to add these claims. But given the posture of

the case, the trial court properly declined Mr. Allphin's request to impose penalties for

any records other than the six e-mails that formed the basis of the 2016 remand order.[1]

*Burden of proof*

Mr. Allphin next argues that even if the trial court properly limited the scope of

the remand hearing to the six withheld e-mails, the court nevertheless abused its

discretion in awarding only $490 in PRA penalties. According to Mr. Allphin, the trial

court erroneously shifted the burden of proof from the County onto him. We disagree.

Mr. Allphin's burden shifting arguments fail because they rest on a

mischaracterization of the trial court's decision. The trial court found the County had

---

[1] Mr. Allphin should have been well aware that this case only pertained to the six e-mails. The Supreme Court Clerk emphasized this point in reducing Mr. Allphin's 2019 fee request. And our 2022 decision emphasized that Mr. Allphin's belief that the hearing for penalties on the six withheld e-mails would address other PRA disputes with the County was a "mistake" and "misguided." *Allphin* IV, No. 38228-1-III, slip op. at 9-10.

shown "a lack of bad motive at least up until—up through the time [the six e-mails] were produced." RP (Aug. 5, 2022) at 62. In support of this finding, the trial court noted that the allegedly undisclosed records were innocuous and that there was not "any evidence, with regard to these six records, of dishonesty or bad faith or intentional non-compliance." *Id*. at 60. The court also referenced the extensive efforts the County took to respond to Mr. Allphin's PRA request and to promptly correct the alleged errors. This analysis indicates the trial court held the County to a burden of proving lack of bad faith.

We note that even if the trial court had assigned the burden of proof to Mr. Allphin instead of the County, this approach would not have been an abuse of discretion. In a previous appeal involving Mr. Allphin and the County, this court held that Mr. Allphin had the burden of proving silent withholding. *See Kittitas County v. Allphin*, No. 34760-5-III, slip op. at 26 (Wash. Ct. App. Mar. 13, 2018) (unpublished portion) (*Allphin* II) (quoting *In re Est. of McKachney*, 143 Wash. 28, 30, 254 P. 455 (1927)), https://www.courts.wa.gov/opinions/pdf/347605_pub.pdf. Because Mr. Allphin's claim of bad faith was based on allegations of silent withholding, the trial court could have acted within its discretion by holding Mr. Allphin to the burden of proof on this issue.

*Failure to consider evidence*

Mr. Allphin argues that even if the trial court properly refused to impose penalties for new PRA violations, the court should have considered evidence of the violations as an aggravating factor relevant to the penalty for the six undisclosed e-mails. We agree with Mr. Allphin that allegations of additional violations are relevant to a trial court's PRA penalty determination and therefore should be considered. But here, Mr. Allphin's arguments fail because the record shows the trial court did consider the evidence of new violations.

The court's written ruling stated it "decline[d] to consider [the new] allegations *as meriting* a heightened penalty award." CP at 469 (emphasis added). This language does not indicate the court refused to consider the new allegations. Rather, the court merely deemed the new allegations meritless. The court did not strike Mr. Allphin's evidence or cut off his arguments. The court simply found Mr. Allphin's allegations of a "massive scheme" to violate the PRA unconvincing. RP (Aug. 5, 2022) at 56.

Although the trial court did not refuse to consider the evidence of new PRA violations, it arguably had discretion to do so in this case. Mr. Allphin waited until his reply brief to argue that his new PRA claims were relevant to determining a penalty for the six withheld e-mails. The reply brief was not filed until the day before the remand hearing, thus depriving the County of any opportunity for a written response. Given the

17

posture of the case, the trial court likely could have declined to consider arguments raised by Mr. Allphin for the first time in his reply brief. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

*Excessive litigiousness*

Mr. Allphin's final claim is that the trial court abused its discretion by failing to consider the County's excessive litigiousness as evidence of bad faith in awarding penalties. We are unpersuaded. While excessive litigiousness might qualify as an aggravating factor in some cases, here it does not.

The County's original complaint for declaratory relief was largely successful. In our 2016 decision, we mostly upheld the County's handling of Mr. Allphin's PRA request. While the County did not prevail on the issue of the six withheld e-mails, its arguments were not frivolous. The County made the plausible argument that a withholding penalty was unwarranted pursuant to this court's decision in *Hobbs v. Washington State Auditor's Office*, 183 Wn. App. 925, 335 P.3d 1004 (2014). This was fair, even if the County did not ultimately prevail. Furthermore, the County's position did not prolong the parties' litigation. As noted by the Supreme Court Clerk, the issue of the six undisclosed e-mails constituted only approximately 5 percent of the underlying litigation. The remaining 95 percent of the litigation was devoted to Mr. Allphin's unsuccessful PRA arguments.

Nothing about the County's actions during the initial remand proceedings were improper or excessive. After two years passed without Mr. Allphin seeking an order of penalties pursuant to our remand order, the County scheduled the matter for a hearing and provided notice to Mr. Allphin. Although the County initially argued that Mr. Allphin should be deemed to have waived his right to penalties for the six withheld e-mails, at the hearing the County changed course and advised the court that it could either find waiver or grant penalties. It was the trial court's ultimate decision to find waiver, not the County's. While the County's effort to defend the trial court on appeal did not prevail, its position was not frivolous. Furthermore, the County's decision to defend the trial court's order was not the true cause of the delay. Mr. Allphin could have received his penalty award back in 2019 had he not engaged in a misguided effort to resolve extraneous PRA claims prior to noting his case for hearing.

Nor did the County engage in improper conduct during the most recent remand. The County did not act in bad faith by noting a motion for hearing 90 days after issuance of our decision. Although the 90-day hearing deadline might properly be understood as starting with the date of the mandate, our written decision did not make this clear. Arguably, the motion for fees and penalties needed to be filed within 90 days of our decision. By filing its motion for determination of fees and penalties 90 days after issuance of our opinion, the County appears to have been operating in a good faith effort

19

to save Mr. Allphin from another allegation of waiver. This was not bad faith. Nor did the

County's strategy impair Mr. Allphin's ability to present his case.

## CONCLUSION

The trial court did not abuse its discretion in assessing penalties and fees related

to the County's 98-day failure to disclose six e-mails. The order on appeal is therefore

affirmed. Mr. Allphin's request for attorney fees on appeal is denied.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____          _____
Staab, A.C.J.                                    Cooney, J.